Good morning, Your Honors, and may it please the Court, Matthew Monfortin, appearing on behalf of the Appellant Sanders County Republican Central Committee. With the Court's permission, I would like to reserve five minutes of time for rebuttal. My client desires to endorse two judicial candidates for the Montana general election in November. Every voter in Montana, every union, every radio station, every television station, every newspaper, every conservative interest group, every liberal interest group, everyone gets to endorse judicial candidates in the state of Montana, except for us, except for political parties, except for my client. And that is because, under the statute that we are challenging, members of political parties can be jailed if they cause a political party to endorse a judicial candidate. The statute that we are challenging is a content-based, speaker-based censorship law that criminalizes speech about candidates for public office in an election. Contrary to the state's argument, this statute is subject to strict scrutiny. Contrary to the district court's holding, this statute cannot survive strict scrutiny, because there is not a shred of evidence to show that this statute is necessary to achieve a compelling state interest, namely, the preservation of judicial integrity in the state of Montana. Now, there's no bar on the individual members of the Republican Party for endorsements? Yes. Do I understand that you're not challenging the contribution part of the statute, just the endorsement and expenditure parts? That is correct, Your Honor, and there may have been some confusion in the district court, probably a lot of it my fault. I believe the district court judge asked me that, and my answer should have been that we are not challenging the contribution portion of the statute for the practical reason that we have no money to contribute to judicial candidates. I do want to make clear that we not only want to endorse judicial candidates, but also we want to have the means to be able to endorse judicial candidates, simply by basically publicizing those endorsements on our website. That's the expenditure part? Correct, Your Honor, and I do want to make that clear that that's what we need to do, is not only endorse candidates, but also to be able to publicize them on our website, run an ad in the local newspaper in Sanders County. It's a fairly trivial sum, but there is some monies that need to be expended, and unfortunately, the state of Montana has a habit of going after small organizations for the most trivial of expenditures on behalf of their promoting their political views, and that's why it's important for me to clarify what exactly it is that our client seeks to desire, or seeks to do. Contrary to the district court's holding, the statute cannot survive strict scrutiny because it is not necessary to advance a compelling state interest, namely judicial integrity in the state of Montana. There are 39 states in this country that elect judges. 37 of them make no effort whatsoever to hinder or obstruct the endorsement, partisan endorsements of judicial candidates. The state of Montana cannot show that in any case, with any litigant, in any state, at any time, a litigant has been denied due process or been denied a fair trial simply because a judge has received a partisan endorsement in that particular case. Indeed, there are some states in which judicial endorsements are not only permitted, partisan endorsements of judicial candidates are not only permitted, but there are some states in which judicial candidates are allowed to run as partisans. And I believe, and you can correct me if I'm wrong, Judge Rykoff, I believe New York is one of those states that allows judicial candidates, requires judicial candidates to run as Republicans when they appear on the ballot, or run as Democrats when they appear on the ballot. That's true, although there's never any accounting for what New York will allow. And then, there may well be the case, Your Honor, but notwithstanding that virtually every state in the country allows partisan endorsements of judicial candidates, notwithstanding that there are some states in this country, New York being one of them, that allow judicial candidates to run as partisans, the state of Montana claims that a mere endorsement from our client will lead to the destruction of judicial integrity in the state of Montana. A client can't make an endorsement except upon penalty of going to jail, right? Or their executive's going to jail. That's correct. Well, that's one of the potential penalties. But a prominent, a prominent individual Republican could make an endorsement with impunity, right? Yes, that is correct. So now, apart from arguing that it's not necessary to have the statute to serve a compelling state interest of judicial integrity, I take it you're also arguing that the statute's not narrowly tailored, and it's under-inclusive. If that's its purpose, it doesn't reach everyone that they should be reaching. Yes, Your Honor, that's one of several problems with the statute. Under-inclusiveness is a significant problem with the statute, never addressed by the district court. If, in fact, judicial, if, in fact, endorsements of judicial candidates are, have the potential of creating this horrible evil of impacting judicial integrity, then every single partisan, not just political parties, should be affected by that statute. Political parties are not the only partisans that exist. Unions have their own particular view on things. So, political parties, just another interest group? Yes, Your Honor, as far as the First Amendment is concerned, that's exactly right. Unions have their own take on things. Corporations have their own, have their own ax to grind, if you will. Conservative groups do. Liberal groups do. If, in fact, endorsements lead to the disintegration of judicial integrity, then all of these groups should be banned from making endorsements. Obviously, the statute does not do that, and because the statute does not do that, because it focuses on- Well, you're not saying, are you, that political parties aren't, in some respects, different from other interest groups. What you're saying, as I understand it, is that for these purposes, they're not different from other interest groups. Correct. For purposes of being able to express their First Amendment rights, they have the same fundamental First Amendment rights to opine on candidates as any other interest group does, and that's really the core of our work. If you had, in Montana, a former state senator who was a Republican, or a former governor of the state, you know, who was known as a Republican, they could endorse a candidate here and not be subject to this crime, right? That's correct, Your Honor. Okay, but the party can't. Correct. That's correct. And that brings up an important point, and it's one of the points that the state has raised, and I believe the Amici has raised as well, is that, well, the members of my client can make endorsements in their capacity as individuals, so what's the real harm here? The problem is my client wants to speak as the Republican Party, and the reason for that is the same reason that labor strikes are conducted by unions rather than individual workers. You know, I have, I just, I can't help but think of the season that we're in, and we just finished a major national convention in which that party had a platform, and was on national TV, and was asking people to vote for candidates who represent certain ideas, and we're going to have the same thing beginning next week by a different party asking us to watch and putting forth a platform on all kinds of issues, and to vote for that candidate. Is there any other interest group in this country that does that? That calls upon voters to vote for a certain candidate or vote against a candidate? It runs candidates that are identified with platforms that advance a whole panoply of views on all of the issues that are before the country. There are interest groups that will put out mailers or slates saying these are the people who are, who we believe are best for Second Amendment rights or best for reproductive rights. But they don't nominate the candidates for the political branches of government. That is correct, Your Honor, and that is one difference between political parties and other interest groups. To get back to a point that Judge Gould made a moment ago, the fact that, yes, individuals from my client can, in their individual capacity, make endorsements, but the First Amendment right to free speech guarantees the right to speak freely and collectively. There is strength in numbers, and there is power in a unified voice. And the Supreme Court has recognized that principle over and over and over again for over 50 years, starting in NAACP versus Button, going all the way to, most recently, Citizens United. The right to speak freely encompasses the right to speak collectively. My client wants to speak as the Republican Party of Sanders County in order to inform the voters, the Republican voters of Sanders County, who it is that we've put our good housekeeping seal of approval onto, for lack of a better phrase, so that the Republican voters know who the Republican Party believes is the best. What is the voter to understand by your good housekeeping seal of approval by the Republican Party? It's our understanding, at least with most Republican voters, that they will believe, if we endorse those candidates, or endorse certain judicial candidates, that those certain judicial candidates will bring with them a certain judicial philosophy to the bench. Specifically, a philosophy of limited action by the court, not legislating from the bench is the common phrase. And that's the view that Republican voters tend to have. And that's the view that we believe, or that's the idea that these voters will have, if and when they see an endorsement from our party. There may be other voters that don't share those views. There may be other voters who, when they hear an endorsement from my client, will do exactly the opposite and vote for the people that vote against it. So they're really going to think, this candidate, who is endorsed by the Republican Party, shares the Republican Party's views on these issues. That's the message. Correct. Correct. And we see no problem with that, because the Supreme Court in the Minnesota Republican Party versus White made clear the judges are not expected to come to the bench without any preconceived notions of legal issues or political issues. It's simply important that the judges who are elected or selected, as the case may be, come to the bench with an open mind. They are not expected to come to the bench with what the court has described as basically an empty head, meaning having no views whatsoever on abortion, no views whatsoever on Second Amendment rights, things of that nature. Assuming, for sake of argument, that we were persuaded by your argument and not by the state, when do you need a ruling to participate in the next election? Your Honor, we need a ruling prior to September 25th, which is the date that the district court has set the trial in this matter. We had asked the trial court to continue the trial to give, frankly, to give the court a little more, this court a little more time to review the issues. The court denied that motion. Our concern is that if the trial goes forward on September 25th without a ruling from this court, then that could potentially moot any request for relief that we are seeking on preliminary injunction. For the reasons I explained in my brief, it's important, we believe it's very important that this court weigh in on these First Amendment issues. It's our belief that, to put it as respectfully as possible, that the district court simply is not correctly applying the First Amendment to this case, and we believe we will be at a severe disadvantage if we are forced to go to trial with the district court's notions of the First Amendment that... What's the trial supposed to be about? That's an interesting question, Your Honor. To be quite honest with you, my sense of how I'm going to put on my case is going to... will involve putting on the chair of my committee. She's going to testify for about 20 minutes as to what the committee does, why the committee wants to endorse judicial candidates, and the committee's intention to do that if, in fact, they are permitted to do so. I'm not sure there are a whole lot of triable issues of fact in this case. We have an expert that we may call just to kind of spice things up a little bit. He's a former... he's a current district court judge in our state, and there's not a whole lot of issues to try as far as... But your clients might also say that they're not going to endorse as a party if it means they're going to jail. Correct. Correct. There are several... Did your argument... let me just... Of course, your party... the party endorses candidates for the executive branch and for the... in fact, they nominate them and run them, pay for the campaigns and everything. Are you... are you really saying that there is no difference between the judiciary and the other branches of government with respect to the political parties? We believe that's correct, Your Honor, at least as far as First Amendment speech is concerned. And the Supreme Court has said as much in Republican Party v. White. They took issue with Justice Ginsburg's argument that judicial elections are somehow different than executive branch elections or legislative elections, at least as far as First Amendment purposes are concerned. If a state chooses to select its judges by election, then it has to accept all of the things that go with elections, First Amendment rights being the primary factor that... or the primary component that goes into a fair election. But that was the prescription on the candidate. Correct. Yes. Yes. If the members of the panel have no further questions, I'd like to reserve the remainder of my time for rebuttal. That's fine. Thank you, Your Honor. Okay, Mr. Black. Good afternoon. May it please the Court, my name is Mike Black, counsel for the state parties in this action, and I thank you for the opportunity to appear before you today. I think the first question that Judge Gould posed to us is how fast do we need a ruling from this Court? Absentee ballots in Montana are not available until October 9th. This trial was set on an expedited basis in order to accommodate that. I believe that Judge Lovell will expedite his decision after whatever evidence is presented to him in that hearing. What's it a trial about? Well, the trial is going to determine what I believe the nature of the state's interest and how strong that interest is and the narrowness of the interest. Since we had our hearing on June 10th, we've had no further hearings, but I think that what Judge Lovell offered the opportunity to plaintiffs, appellants in this matter, is the opportunity to develop evidence that there is a less restrictive alternative. Certainly, at least in the work that we've done since then, is that we believe that there's a convincing case that can be made that Montana does not believe that this is a merely procedural device as to how to run elections, that it's a deeply ingrained policy choice that has been made dating back at least 77 years to make these races nonpartisan, and that regardless of what level of scrutiny is employed, the issue of whether we can maintain nonpartisan judicial elections, we're not talking about all elections, we're talking about judicial elections, can only remain nonpartisan if endorsements by political parties are prohibited. Mr. Black, if I may, let me try to clarify my concern that I was expressing about individual members of a party endorsing. So you can hone in on it. In our Washington ballot books, we often see issues where there are endorsements from like a slew of political figures, former governor, former senator, current politician, and it always seems to convey the same thing that a party endorsement would convey. So my concern is if that can be done in Montana, if a former governor who is a prominent Republican or former senator of the same can endorse a judicial candidate, then doesn't that make this prohibition very under-inclusive? It doesn't make it under-inclusive in a very real sense, and that is that regardless of whether certain sections of the population understands who's making the endorsement and whether they're partisan or not, and you can even go further. We've had a number of justices on the Montana Supreme Court who used to serve in the legislature. Gene Turnage is one that comes to mind. There are certain people who are going to know that these are partisan folks, but not everybody is going to know. And I think that the example that Judge Schroeder raised with respect to conventions and just the issue of saturation of various parties, I think that Montana has made the choice that by virtue of not prohibiting speech on issues, but really what we are prohibiting here in order to maintain nonpartisan elections is essentially a very narrow restriction on speech, and that is that you can't endorse a candidate. But your adversary is saying that there is an important piece of information that is only conveyed by party endorsement that the voter, unless there is some very compelling interest to the contrary, deserves to know, which is that if endorsed by the Republicans, this judge represents or is believed to have one judicial philosophy, and if endorsed by the Democrats, this judge in the view of the party has a different judicial philosophy. And the party endorsement carries that message in a way that no individual endorsement can possibly carry. So why is that not correct? Well, I think there's two ways to approach that, Your Honor. One is there is nothing that precludes the Sanders County Republican Committee or any other political organization in the state of Montana from speaking out on issues. They can speak out and say it is important to us that judicial candidates have the following values. As a matter of fact, they've done it. But the average voter is not going to know whether Judge X, Judge Y, or Judge Z has those views or lacks those views unless they are specifically endorsed by a particular party. As a practical matter, judges being by nature shy and reticent are unknown entities to most voters, and all they know about them is who's endorsing them. Well, what I do think that raises Justice Rakoff or Judge Rakoff is the problem of the appearance of impartiality or even, in fact, the appearance of nonpartisanship. Because as the jurisprudence has evolved over the last few decades, I mean, not only is it the fact of actual impartiality or nonpartisanship an important interest for the state to preserve, but it's the perception of people that are appearing before the court or may be parties in that court, whether it's in a criminal action or in a civil action, that the folks before them have an open mind, that they're not predisposed to any partisanship. Well, that goes to the judge. It would be one thing to say a judge should not come out on the bench and say, I'm a Republican, I'm a Democrat, and I want you all to know that, and indeed judicial ethics would preclude that, let alone anything else. But this is not the question of the judge's views. This is the question of the views of those who think that this particular judicial candidate should be elected over that judicial candidate. And I understand that, Your Honor. I think that the best way to approach this, and this may not be sufficient with respect to a strict scrutiny analysis, but if we look at how an endorsement actually works, I mean all an endorsement is is a contribution to a candidate without passing legal tender. I am giving you this measure of support, and we know if we look at contribution jurisprudence, and the Thalheimer case is one that's actually been cited to the court by the appellants, that there are a variety of restrictions on speech to serve essentially the act of actual corruption or the appearance of corruption. And if we look at the issue of open-mindedness, the issue of open-mindedness and the appearance of open-mindedness, in a sense is a subset of that, that I strongly urge this panel, at least when we're only talking about endorsements, and that's really all we're talking about here, I'm happy to talk about the issue of expenditures, but I think that that has been set aside as we've indicated in our briefing. But really all you're talking about is I favor this person. And the U.S. Supreme Court case, Citizens United, Caperton, none of these cases have overruled what Thalheimer relied on, which is the FEC versus Beaumont case, and the Swanson case I think out of the Tenth Circuit, maybe it was the Eighth Circuit, talking about you can have closely drawn restrictions if you have a sufficiently important government interest. And here the sufficiently important government interest is Montana has decided for many decades that these races will be non-partisan. Well, but that's a little tautological, I guess. When you say non-partisan, what is the real evil, the bad thing that the state is concerned about? Well, without falling into the trap that we're trying to be paternalistic, which is what they're trying to argue here, the point here is that the state of Montana wants people to focus on the issues as opposed to partisanship. And certainly with respect to judicial elections, issue advocacy has not been precluded by virtue of the endorsement ban. I mean, all the endorsement ban is is a contribution without money. We are saying that we like this person better than the other person. It's not providing any significant information. And I think that if we look at the Seifert case and the Wursel cases, which are the most recent cases, they struggle with the issue of what is an endorsement and whether an endorsement itself is core political speech because it really doesn't have a lot of substance to it and it's rather facile. And that's why if we analogize it more to a contribution where we have a lower level of scrutiny that's been recognized and certainly where the Supreme Court has determined and Dalheimer has determined, for example, that certain entities may have their speech restricted as long as there's a sufficiently important interest. And certainly corporations can still be banned from making contributions. Foreign nationals can be banned from making contributions or making independent expenditures. That's what the Blumen case is. And by further analogy, and I think that this also comes up in the Seifert and Wursel cases, are the Pickering line of cases and letter carriers where certainly the Citizens United case recognized that where the functioning of an important government entity, and here we're talking about the judiciary and only the judiciary, is at issue. There may be restrictions on partisan speech. Now, we do have examples of where partisanship has been addressed and it hasn't been fully fleshed out in the Strata case, for example, where the Supreme Court talks about the importance of the integrity of the judiciary and talks about how its reputation for nonpartisanship is so important. And so I think that if we look at it in those contexts, I mean, I understand the concern about the tautological reasoning, but certainly if we step back a little bit and start thinking about the actual goals here, and maybe this is where we talk about the republican form of government and how Gregory v. Ashcroft deals with these types of issues, is that the state of Montana in this circumstance has decided that in order for us to determine the qualifications of our judges, and when we're talking about such an important paramount consideration regarding impartiality and fairness, is that we have decided that these races should be nonpartisan. Then, Mr. Black, is there any significance to the fact that the limitation, if violated, invokes a criminal penalty? Like, does what the Supreme Court said in the Alvarez case about the guy who falsely said that he was a war hero, does that have any bearing here on this tension? I don't know that it has any significant bearing here, Your Honor. I think that Alvarez, I'd have to go back and look at the Supreme Court opinion on that. I mean, obviously, there is a potential criminal sanction in the statute. I mean, it's a misdemeanor under Montana law for this to occur. Has anyone ever been prosecuted? Not to my knowledge. What did happen here is that the Sanders County Republican Central Committee sent a letter to the Commissioner of Political Practices asking them to agree that this statute was unenforceable because of Citizens United. The Commissioner responded, it's my obligation to enforce the law, and therefore I intend to fulfill the responsibilities of my office. Now, as a practical matter, how it would happen in Montana is that, unlike the Canyon Ferry case that was referred to in the reply brief, is that if the Commissioner of Political Practices chose to enforce the law, they would enlist the county attorney or have to obtain some help in prosecuting. They have no prosecutorial function in and of themselves. So I am unaware of anybody ever being prosecuted under this law. I'm unaware of anybody ever even raising the issue until a few days before the primary this year when, in follow-up to the correspondence between Commissioner Murray and Ms. French, that this lawsuit was filed. And, frankly, that goes... Well, if no one's ever raised the issue, then of course no one's ever been prosecuted, right? That's right. That's a circular... It is, but, frankly, it has never been an issue. This law, I mean, and I know that... It was never endorsed, I guess. Yeah, I'm not aware of any political party endorsements of any judicial candidate in Montana. Let me ask you this. I'm not quite sure I understand the status of the part of the statute with respect to contributions. Given the Supreme Court's holdings with respect to campaign contributions and Buckley, starting with Buckley, that money is speech, if we, and your adversary has been very clear that there isn't a lot of money here because the Republican Party doesn't have a lot of money, but assuming that there was a lot of money available in the party coffers, would a holding of endorsement necessarily, the right to endorse, would that necessarily also affect the right to contribute, or are they separate here? I'm not quite sure. Well, one of the things that is interesting about the posture of this case, Your Honor, is that if you read the complaint broadly, and I think that they make this point in their briefing, is that they are talking about expenditures and endorsements. I think they purposely... But not contributions. But not contributions. Contributions isn't technically at issue here. I believe that the record indicates, and I believe that Judge Lovell believes, based upon the way he wrote his order, that the issue of expenditures in this case is off the table. And certainly to the extent that this court is going to consider what Judge Lovell did, I think it's very difficult to find an abuse of discretion or even an error of law under the standard of review when the record indicates that expenditures isn't part of what we're talking about here. Well, let me just understand what you're saying. If we were to hold that a political party may endorse a judicial candidate, and in order to do that they have to buy, to make it effective, they have to buy a newspaper ad, are you saying that that is an impermissible expenditure? It would be an expenditure. So doesn't it follow that if we allow the endorsement, we have to allow the expenditure? No. And certainly none of the facts is presented to this court. Because you can endorse verbally, you can endorse through all sorts of communications. But that was what Judge Lovell was trying to get to on the record in this case. So you think there could be a statute that says, we will allow a political party to endorse a candidate as long as it doesn't spend even one penny to make sure that someone knows what it has to decide. That raises two different issues, Judge Rakoff, as I understand it. One is the scope of the statute and whether it's severable, which has really not been briefed or even argued in this case yet. And the second question is not whether or not the scope of the endorsement necessarily includes independent expenditures. The issue is how that got to this court and what was considered on the motion for a preliminary injunction. Because Judge Lovell was very clear. Because when we came to court on the temporary restraining order, and I know that that transcript's not before the court, is the first thing that I argued is, Judge, they are not just here to talk about endorsements. They're here about spending money. And that's why when we came back on the preliminary injunction hearing, Judge Lovell wanted to make sure what we were really talking about here.  versus independent expenditures, then we are in a Citizens United Territory. We are really talking about what type of restrictions you can make. Yeah, but everyone's agreeing that contributions is out of it. But in terms of expenditures, what would prevent this court from saying as a matter of law that it's inherent in the right to endorse a candidate, assuming we're so fine, that you should be able to spend money to make that endorsement known to the public? Yeah. As a matter of law, there may be nothing that precludes you from doing that. Because certainly when we're talking about independent expenditures, the ability to restrict speech in that sense is a difficult issue. It's certainly on this record, and I understand the concern. The question is, do you think you can really go back, if we were to say that they must be able to endorse, can you really go back to Judge Lovell and say, well, you could still bar them from making any expenditures? If they were allowed to endorse, I think it would be difficult to make that argument. And frankly, we haven't reached that precipice here. Frankly, I am ultimately, as an officer of the state, I am more concerned about the contributions and the severability of the statute. We do have contribution limits and those sorts of things, and that's the subject of other litigation. I see my time is up. I would just submit, Your Honor, given the posture of this case. Do you need another minute or two to finish your thoughts? Really, there's not an awful lot to add. I just want to intimate and urge this Court to use restraint here. We have a system here that has been in place for 77 years. If you look at the various factors for injunctive relief, the reason why we're in this posture is because of the decision of the Sanders Counter-Republican Committee to wait until the very end to seek this relief. And I believe that the Court set this on an expedited trial setting so we can get these things fleshed out prior to the election. I have no doubt that Judge Lovell will get this done before October 9th. Okay. Am I correct that this would not affect the printing of the ballots? No. It has no bearing on printing of ballots. And that deadline is already passed anyway. Thank you, Your Honors. Thank you, Mr. Black. And Mr. Montfort. Thank you, Your Honor, and I'll be very brief. I know it's Friday afternoon. I know you folks are probably more tired than we are. To go to a point, Judge Gould, that you raised a moment ago, the statute has attached to it possible criminal sanctions. We have a statute that criminalizes speech made about candidates for public office. This is one of the key points that the Supreme Court raised in or that the Supreme Court discussed in the Citizens United case, the fact that we have when the government seeks to use its full power, including the criminal law, to command where a person may get his or her information or what distrusted source he or she may not hear, it uses censorship to control thought. The fact that there are criminal sanctions attached to this speech prohibition makes it all the more draconian and makes it all the more unconstitutional. Counsel has brought up the Seifert case, which was discussed in the briefs as well. The problem for the state is that Seifert doesn't help the state's case. Seifert undermines the state's case because the first portion of the Seifert opinion discusses the fact that judicial candidates have a First Amendment right to associate with political parties, to, in essence, publicly support political parties. So that raises the issue that if a judicial candidate has a First Amendment right to publicly support a political party, then why doesn't a political party have a First Amendment right to publicly support a judicial candidate? They don't have an answer for that question. And that's one of the reasons why this statute can and must be declared unconstitutional and the enforcement of the statute must be banned. There's also a considerable amount of argument made by the state and talked about a little bit today about the fact that this statute has been on the books for, in essence, 70 to 80 years, and that's indeed the case. There hasn't been a political party that until now has attempted to challenge the statute, but that doesn't have any bearing on the constitutionality of the statute itself. The statute may be, and the traditions in Montana may be, hallowed by history but not by reason. Plagiarism is always the sincerest form of flattery. Counsel, I think you earlier indicated that, you know, you'd like to see this ruling expedited ahead of your expedited trial. That's how I understood it. Yes, Your Honor. But as I understand, Mr. Black, he's saying that Judge Levell is going to deal with the trial on an expedited basis and that, you know, that ruling would come out before, you know, before you have election needs. I guess that ruling could be appealed. It could be appealed, Your Honor. The problem is there's a chance, at least potentially a good chance, that if we go to trial as the law currently stands, or at least as Judge Levell's opinion of the law is, there's a good chance that we may lose and we may have to appeal. And that appeal will have to take, assuming that there's a judgment rendered in late September or early October, he hasn't told us when, understandably so, but that's when the absentee ballots start going out. We would have to file an emergency appeal with this court because this appeal is now, would be mooted after the trial court renders a judgment. So we'd, in essence, be back to square one, except instead of us being here in late August, we would be back here in the middle of October on an emergency basis. Your concern on timing is, on mootness, is you want a ruling before the district court can rule because that might make this moot? Yes, Your Honor. If the court is able to issue a ruling prior to the district court, prior to the trial date on September 25th, that's what we would do. The preliminary injunction issue then would be moot, right? Well, it depends upon the type of relief that this court grants. If this court issues an injunction saying, in essence, we can go ahead prior to the trial and do it. I'm sorry, I meant if we just sat on it and the district court tried the case and gave its ruling, then I think the preliminary injunction issue is gone then. Correct. Correct, Your Honor. Have the candidates themselves already been announced, so to speak? The ballot has been printed, so they're on there. So if you're entitled to an endorsement, you need to get that message out. So every day you're being deprived of that, your First Amendment rights are being chilled by that in practical terms. That's exactly right, Your Honor. In fact, the election that took place for Montana Supreme Court justice was one of the closest elections in our history. There was a 2% difference between the first-place finisher and the third-place finisher. It's a tight election, and every other speaker in Montana is opining on their choice of candidates except for us. Every day that goes by that we are silenced diminishes our ability, if and when we get it, to actually impact the election. Well, I think your time is up and a little more, so we should probably conclude our argument with thanks to both of you for having here to illuminate us on this challenging case. Thank you, Your Honor, and thank you for your time, and thank you for hearing this case on an expedited basis. I know it's not easy for you folks, so we really appreciate that. Okay, thank you. Thank you. Okay, the Court will adjourn. Oh, Stacy, put down on the record that the Sanders County Republican Center case is submitted.
judges: Rakoff, Schroeder, Gould